PERKINS ELECTRIC SWITCH MFG. CO. v. KNOWLES.

(Circuit Court, D. Massachusetts. September 14, 1910.) †

No. 576.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—INCANDESCENT LAMP SOCKET.
   The Perkins patent, No. 626,927, for an incandescent lamp socket,
   while it does not involve a conception of a broad and novel character,
   discloses invention, and the specific structure is novel and useful; also
   *held* infringed.

In Equity. Suit by the Perkins Electric Switch Manufacturing
Company against Charles S. Knowles. Decree for complainant.

Hubert Howson, for complainant.
Roberts, Roberts & Cushman, for defendant.

BROWN, District Judge. The bill charges infringement of claims
4 and 6 of letters patent No. 626,927, June 13, 1899, issued to com-
plainant as assignee of Charles G. Perkins, for "Incandescent Lamp
Socket."

"4. In combination in a lamp-socket, a shell, two blocks of insulating ma-
terial with recesses arranged to form insulated chambers, a plate with a
binding-screw located in one of the chambers, a plate with a binding-screw
located in the other of the chambers, and a switch-block located in one of the
chambers and adapted to make contact with the end of the plate in the
same chamber, substantially as specified."

"6. In combination in a lamp-socket, a cap, a shell, an insulating-lining
fitting the shell, two blocks of insulating material with recesses arranged to
form two insulated chambers, a plate with a binding-screw located in one
of the chambers, a plate with a binding-screw located in the other of the
chambers, and a switch-block located in one of the chambers and adapted to
make contact with the end of the plate in the same chamber, substantially
as specified."

The Perkins patent has received most careful consideration by the
courts of the Third and Sixth circuits, and has been held valid in suits
by this complainant against Buchanan, 129 Fed. 134, affirmed 135 Fed.
90, 67 C. C. A. 564, and against the Yost Electric Manufacturing
Company, as appears by opinion of the Circuit Court of Appeals for
the Sixth Circuit June 7, 1910. Yost Elec. Mfg. Co. v. Perkins Elec.
Switch Mfg. Co., 179 Fed. 511, 103 C. C. A. 116. In this opinion
reference is made to the opinion of the Circuit Court of Appeals in
the Buchanan Case, 135 Fed. 90, 67 C. C. A. 564, and it is said:

"Out of respect to that court, and the comity due to it, and notwithstanding
the doubt implied from what we said on a former page of this opinion, we
are disposed to follow the decision of the Third Circuit Court of Appeals."

From the opinion as a whole it is apparent that the question of
patentability, in view of the prior art, was regarded as doubtful. In
fact, the course of reasoning on the merits in the Yost Case gives
little additional support to the complainant's case. The substance of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
   † Received for publication May 24, 1911.

the decision in the Yost Case is in its application of the rule of comity, and as that learned court doubtless had in mind the opinion of the Supreme Court in Mast, Foos & Company v. Stover Manufacturing Company, 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856, the fact that the rule of comity was invoked is an indication that the question of patentability was regarded as close and doubtful.

Upon the present hearing the case still remains close and doubtful notwithstanding the prior decisions of the two courts of appeal. In view of the Pass & Seymour patent, No. 568,919, October 6, 1896, and of the patent to Rockwell, No. 488,222, December 20, 1892, I am of the opinion that no conception of a broad and novel character can be found in the Perkins patent. The feature of two separate insulated chambers is clearly disclosed in the Rockwell patent, and it seems to me also that it is substantially disclosed in the Pass & Seymour patent. The criticisms of the Pass & Seymour invention are directed to the particular structure. shown in the drawings and to the commercial device rather than to the invention fully described and claimed in that patent.

Notwithstanding, however, that the prior art shows two insulated chambers, I am of the opinion that the Perkins patent describes a structure which is a better and more practical embodiment of the two-chamber idea than is shown either in the Pass & Seymour patent or in the Rockwell patent. The specific structure is novel; the structural parts are of special form; the parts are assembled in a special manner; and though there is no one feature of fundamental electrical or mechanical novelty added to the art by the Perkins patent, yet the changes from the devices in the prior art which were required to produce the Perkins structure are not obviously such as would occur to the ordinary person skilled in the art. A mere carrying-up of the walls of the Pass & Seymour chambers, for example, would not have produced the simple and practical arrangement of parts shown in the Perkins patent, and Rockwell's disclosure of two chambers still left room for invention in a practical and simple application of the idea.

Upon a careful consideration of the former opinions, and of the briefs and entire record in the present case, and conceding that it is difficult to support the patent merely upon the narrow distinction that the Perkins chambers are more perfectly insulated than the chambers of Pass & Seymour, it is, I think, a fair conclusion to say that Perkins produced a structure which answers to various demands of the art in a practical and useful way, which is different from the way in which these demands had been met by other devices. The large number of devices in this art tends to justify the conclusion that the Perkins structure exhibits invention rather than the application of ordinary mechanical skill. The structure seems to attain the object of the invention set forth in the specification—a key socket "simple to manufacture and assemble, exceedingly easy to wire, and very durable, efficient, and safe in use."

We are dealing with a patent in an advanced art, and though there can be found in the Perkins structure no single feature of broad nov-

elty considering the subject from a scientific or theoretical view, and though the patent is not primary, nevertheless the device is a practical advance in the art, and has found a prominent, though not a dominating, place in the market.

It is a question, perhaps, whether if the claims be read literally they are not too broad. Limiting them, however, by the specification, they cover a meritorious structure. The two insulating blocks serve to box in conveniently and compactly the switch mechanism, the two parts of the circuit are well separated, cross-circuiting is well guarded against, and the device is easily wired.

It is contended that because the shell and insulating lining are coverings of a common type, there is no true combination. The other parts, however, are specially fashioned for use with an exterior shell. The inclusion of these elements is a limitation of the breadth of the claim, and the contention of defendant's expert, that the presence of a shell with an insulating lining is essential to the practical operativeness of the device of claim 6, supports the view that claim 6 at least is for a true combination.

While there has been some difference of view between the courts which have previously considered this patent, and while some of the expressions of the opinions are perhaps subject to just correction or criticism, yet upon the main question of patentability we have the concurrence of four courts in the view that Perkins' structure involves invention.

Having given to this case the independent consideration requested by counsel I concur in the view that the structure was an invention, and resolve the doubts upon the question of the breadth of the claims in favor of the complainant. The differences between the defendant's socket and the Perkins socket are slight and insufficient to avoid infringement. I find claims 4 and 6 valid and infringed.

A decree for the complainant may be presented accordingly.